# **EXHIBIT 1**

Bidding Procedures Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-_____ (_____) |
| GigaBeam Corp.,[1] | : | |
| | : | |
| | : | |
| Debtor. | : | Ref. Docket No. ____ |
| | : | |

**ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF
DEBTOR'S ASSETS; (B) APPROVING FORM OF ASSET PURCHASE AGREEMENT;
(C) SCHEDULING AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE;
(D) APPROVING PROCEDURES RELATED TO ASSUMPTION OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVING FORM
AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtor and debtor-in-possession (the

"Debtor") for entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United

States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 6004 and 6006 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) (i) approving certain

bidding procedures (the "Bidding Procedures") in connection with the Debtor's sale (the "Sale")

of certain of its assets (as described more fully in the Motion and in the Asset Purchase

Agreement, the "Acquired Assets"), (ii) approving the form of the asset purchase agreement (the

"Asset Purchase Agreement") in connection with the Sale, substantially in the form attached as

Exhibit 3 to the Motion, by and between Debtor GigaBeam Corporation. and Midsummer

Investment, Ltd., individually and as agent, or its assignee or designee (the "Purchaser") (iii)

---

[1] The Debtor is GigaBeam Corporation, tax identification number **-***7757.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or
in the Bidding Procedures (as defined below), as appropriate.

scheduling an auction (the "Auction") in connection with, and hearing (the "Sale Hearing") to consider approval of, the Sale, (iv) approving certain procedures (the "Cure Procedures") related to the assumption of certain executory contracts and unexpired leases, (v) approving the form and manner of notice with respect to the foregoing and (vi) granting certain related relief, including approval of the Expense Reimbursement; and having considered any and all responses and objections to the Motion; and the Court having determined that, to the extent set forth herein, the relief requested in the Motion is in the best interest of the Debtor, its estate and creditors and other parties in interest; due and appropriate notice of the Motion and the relief requested therein was provided by the Debtor, on the following parties: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtor's prepetition and postpetition lenders; (c) the parties included on the Debtor's consolidated list of twenty (20) creditors holding the largest unsecured claims; (d) any party which, to the best of the Debtor's knowledge, information and belief, has, in the past year, expressed in writing to the Debtor an interest in buying the Debtor's business and which the Debtor and its representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transactions contemplated by the Motion; (e) all parties which, to the best of the Debtor's knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (f) all taxing authorities or recording offices which have a reasonably known interest in relief requested in the Motion; (g) all non-Debtor parties to the Assigned Contracts; and (h) all parties requesting notice pursuant to Local Rule 2002-1(b); and the remainder of the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND, CONCLUDED AND DECLARED THAT:[3]

      A.     This Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

      B.     Notice of the hearing on the Motion and proposed entry of this Order has been provided to the Bidding Procedure Notice Parties. Under the circumstances, and in light of the relief requested in the Motion, requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rules 4001(c) and (d) and 9014, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, section 102(1) of the Bankruptcy Code, and no further notice of, or hearing on, the Motion or this Order is necessary or required.

      C.     The Debtor's proposed notices of (i) the Sale, (ii) the Sale Hearing, (iii) the Auction, (iv) the assumption and assignment of the Assumed Contracts and the Cure Procedures related thereto, (v) the Asset Purchase Agreement and the terms contained therein and (vi) the Bidding Procedures, in substantially the form of the Auction and Sale Notice attached hereto as Exhibit B, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Sale, the Auction, the assumption and assignment of the Assumed Contracts, the Asset Purchase Agreement and the Bidding Procedures to be employed in connection therewith.

      D.     The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Bidding Procedures. The Bidding

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Procedures were negotiated in good faith by the Debtor and the Purchaser and are reasonable and appropriate.

E.      The Purchaser has expended, and likely will continue to expend, considerable time, money and energy pursuing the Sale and has engaged in extended arms' length and good faith negotiations with the Debtor. The Asset Purchase Agreement is the culmination of these efforts.

F.      Recognizing this expenditure of time, energy and resources, the Debtor has agreed to pay the Expense Reimbursement to the Purchaser on the terms and conditions set forth in the Asset Purchase Agreement.

G.      The Expense Reimbursement is (i) a material inducement for, and condition of, the Purchaser's entry into the Asset Purchase Agreement and (ii) fair and reasonable in view of the fact that if the Expense Reimbursement is triggered, Purchaser's efforts will have substantially increased the chances that the Debtor will receive the highest or otherwise best offer for the Acquired Assets.

H.      The Debtor has demonstrated a sound business justification for authorizing the payment of the Expense Reimbursement to the Purchaser under the circumstances set forth in the Asset Purchase Agreement and on the record of this chapter 11 proceeding.

I.      The entry of this Order is in the best interest of the Debtor, its estate and creditors and other parties in interest; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1.      The relief requested in the Motion is granted to the extent set forth herein.

2.        The Bidding Procedures attached hereto as <u>Exhibit A</u> are hereby approved and fully incorporated into this Order, and shall apply with respect to the proposed sale of the Acquired Assets; <u>provided, however,</u> that the terms of the Agreement shall remain subject to approval by the Court at the Sale Hearing. The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures.

3.        All responses or objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court are overruled.

4.        The Expense Reimbursement is hereby approved.

5.        Subject to the conditions and limitations set forth in the Asset Purchase Agreement, in the event that the Asset Purchase Agreement is terminated, the Debtor shall pay the Expense Reimbursement to the Purchaser pursuant to the terms and conditions set forth in the Asset Purchase Agreement and without further order of this Court. The Debtor's obligation to pay the Expense Reimbursement shall constitute a superpriority administrative expense priority obligation under section 364(c)(1) of the Bankruptcy Code with priority over any and all expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to any superpriority claims of the Debtor's post-petition lenders. The Purchaser shall not be entitled to the Expense Reimbursement if the Asset Purchase Agreement is terminated pursuant to Section 11.1(a) or Section 11.1(d) of the Asset Purchase Agreement.

6.        The Expense Reimbursement shall be paid in Cash (as defined in the Asset Purchase Agreement), without further order of the Court only upon and contemporaneous with the Closing (as defined in the Asset Purchase Agreement) of an Alternate Transaction (as defined in the Asset Purchase Agreement).

7.     A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the following parties: (a) the Debtor, 4915 Prospectus Drive, Suite H, Durham, North Carolina 27713 (Attn: Samuel J. Lawrence); (b) proposed counsel to the Debtor, Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801 (Attn: Daniel K. Astin Esquire); (c) financial advisor to the Debtor, Focus Management Group (Attn: John Bambach); (d) counsel to the Purchaser, Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 East 55th Street, New York, NY 10022 (Attn: Adam H. Friedman, Esquire), and Landis Rath and Cobb, LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (Attn: Adam G. Landis, Esquire); (e) the Office of the United States Trustee; and (f) once it is formed, counsel to the Committee (collectively, the "Bidding Notice Parties"), not later than 4:00 p.m. (Eastern Time) on October 19, 2009 and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

8.     The Debtor shall have the right to reject any and all bids that it believes in its reasonable discretion, in consultation with any Committee, do not comply with the Bidding Procedures. The Purchaser's Bid as embodied in the Asset Purchase Agreement is deemed to be a Qualified Bid.

9.     As further described in the Bidding Procedures, if a Qualified Bid other than Purchaser's Bid is timely received, the Auction will be held on October 28, 2009 at 10:00 a.m., and the Debtor shall notify the Bidding Notice Parties and all Qualified Bidders which have submitted a Qualified Bid and expressed their intent to participate in the Auction as to the time and place of the Auction designated by the Debtor not later than 4:00 p.m. (Eastern Time) on October 19, 2009.

10.    The Purchaser is authorized to make one or more credit bids at the Auction equal to (i) the Expense Reimbursement plus (ii) any or all of the Purchaser's claims and outstanding obligations under the DIP Credit Agreement and the prepetition Credit Agreement, pursuant to section 363 of the Bankruptcy Code.

11.    Not later than three (3) days after entry of this Order, the Debtor will cause the Auction and Sale Notice, in substantially the form attached hereto as Exhibit B, to be sent by first-class mail postage prepaid to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtor's prepetition and postpetition lenders; (c) the parties included on the Debtor's consolidated list of twenty (20) creditors holding the largest unsecured claims; (d) any party which, to the best of the Debtor's knowledge, information and belief, has, in the past year, expressed in writing to the Debtor an interest in buying its business and which the Debtor and its representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transactions contemplated by the Motion; (e) all parties which, to the best of the Debtor's knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (f) all taxing authorities or recording offices which have a reasonably known interest in relief requested in the Motion; (g) all non-Debtor parties to the Assumed Contracts; (h) the Debtor's known creditors and interest holders; and (i) all parties requesting notice pursuant to Local Rule 2002-1(b).

12.    Not later than seven (7) days after the entry of this Order, the Debtor shall cause the Publication Notice, in substantially the form attached hereto as Exhibit C, to be published in a periodical of reasonable circulation as determined by the Debtor. Such Publication Notice shall be sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtor.

13.     In addition, to facilitate the sale, assumption and assignment of any

Assumed Contracts, the Debtor will serve the Assumption and Assignment Notice, in

substantially the form attached hereto as Exhibit D, not later than five (5) days after the entry of

this Order upon each counterparty to the Assumed Contracts and their known counsel, if any.[4]

To the extent that the Purchaser is not the Successful Bidder and an alternative Successful

Bidder is seeking to have certain Assumed Contracts assumed and assigned as part of an

alternative transaction, the Debtor and the Successful Bidder shall provide financial information

for the alternative bidder to all non-Debtor parties to such Assumed Contracts and their known

counsel, if any, immediately following the Auction via facsimile or overnight delivery.

14.     The Debtor will attach to the Assumption and Assignment Notice a

schedule of cure obligations (the "Cure Schedule") for the Assumed Contracts.  The Cure

Schedule shall include a description of each Assumed Contract to be assumed and assigned to

the Purchaser pursuant to the Asset Purchase Agreement, and the amount (the "Cure Cost"), if

any, the Debtor believes is necessary to cure each such agreement pursuant to section 365 of the

Bankruptcy Code.  If no Cure Cost is listed in the Cure Schedule, the Debtor believes that there

is no Cure Cost for such Assumed Contract.  Unless the non-Debtor party to an Assumed

Contract files an objection (a "Cure Objection") to its Cure Cost by October 23, 2009 at 4:00

p.m. (Eastern Time) (or in the event the Purchaser is not the Successful Bidder, at or prior to the

Sale Hearing), and at the same time serves the Cure Objection upon all of the Bidding Notice

Parties, such non-Debtor party to the Assumed Contract shall be:  (a) forever barred from

asserting any additional cure or other amounts with respect to the Assumed Contract, and the

Debtor and the Successful Bidder will be entitled to rely solely upon the Cure Cost set forth in

---

[4] The Purchaser will provide the non-Debtor parties to the Assumed Contracts with financial information upon

8

the Assumption and Assignment Notice and the Cure Schedule included therein; (b) deemed to have consented to the Debtor's assumption and assignment of such Assumed Contract; and (c) forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder (i) that any additional amounts are due or other defaults exist, (ii) that additional conditions to assumption and assignment must be satisfied by the Debtor or the Successful Bidder or (iii) that there is any objection or defense with respect to the assumption and assignment of such Assumed Contract.

15.     In the event that a Cure Objection is timely filed, such Cure Objection must set forth (i) the basis for the objection set forth therein, (ii) with specificity, the amount the party asserts as the appropriate Cure Cost, and (iii) appropriate documentation in support of its proposed Cure Cost. In the event that the Debtor and the non-Debtor party to the Assumed Contract cannot consensually resolve the Cure Objection, the Purchaser, the Successful Bidder or any other assignee will segregate any disputed Cure Costs pending the resolution of any such disputes by this Court or mutual agreement of the parties.

16.     Hearings on Cure Objections may be held (a) at the Sale Hearing or (b) on such other date as this Court may designate, provided that if the subject Assumed Contract is assumed and assigned, the Cure Cost asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account by the Successful Bidder or any other assignee pending further order of this Court or mutual agreement of the parties.

17.     The Debtor's decision to assume and assign Assumed Contracts is subject to Court approval and consummation of the Sale. Absent consummation of the Sale, each of the

Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

18. Except to the extent otherwise provided in the Asset Purchase Agreement or the purchase and sale agreement with the Successful Bidder, subject to any Cure Cost payments, the assignee of any Assumed Contracts will not be subject to any liability to the non-Debtor counterparty to the Assumed Contracts that accrued or arose before the closing date of the Sale and the Debtor shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

19. Objections, if any, to the relief requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (Eastern Time) on October 23, 2009 and (d) be served so as to be received no later than 4:00 p.m. (Eastern Time) on the same day upon the Bidding Notice Parties, provided, however, to the extent that the Purchaser is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain Assumed Contracts assumed and assigned as part of an alternative transaction, the non-Debtor parties to such Assumed Contracts shall have until the Sale Hearing to raise objections to the sale to the alternative Successful Bidder including, without limitation, to the timing and sufficiency of the adequate assurance of future performance, including as to the timing of adequate assurance of future performance.

20. The Sale Hearing shall be held before this Court on October 29, 2009 at ___:__0 __.m. (Eastern Time). The Sale Hearing may be adjourned, from time to time, without

further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

21.     The Auction and Sale Notice, Publication Notice and Assumption and Assignment Notice to be issued in connection with the Sale, substantially in the form of the notices annexed hereto as Exhibits B, C and D respectively, are approved.

22.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

23.     As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

24.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bidding Procedures.

Dated: _____, 2009
       Wilmington, Delaware

_____
United States Bankruptcy Judge

## **EXHIBIT A TO BIDDING PROCEDURES ORDER**

Bidding Procedures

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-_____ (_____) |
| GigaBeam Corp.,[1] | : | |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

## BIDDING PROCEDURES

The above-captioned debtor and debtor-in-possession (the "Debtor") has filed a chapter 11 case pending in the Bankruptcy Court[2] under Case No. 09-[_____] ([_____]). By motion dated September __, 2009 (the "Motion"), the Debtor sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures") through which it will determine the highest, best or otherwise financially superior offer for substantially all of its assets (the "Acquired Assets"). On September __, 2009, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved the Bidding Procedures.

On October 29, 2009, as further described below and in the Motion and Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtor shall seek entry of the order (the "Sale Order") authorizing and approving the sale of the Acquired Assets (the "Proposed Sale") to the Purchaser (as defined below) or to one or more other Qualified Bidders (defined below) that the Debtor, in its sole discretion, determine to have made the highest, best or otherwise financially superior offer.

*Agreement*

On September [_____], 2009, the Debtor entered into an asset purchase agreement (the "Agreement," a copy of which is attached to the Motion as Exhibit 3) with Midsummer Investment, Ltd., individually and as agent (the "Purchaser"), pursuant to which the Purchaser proposes to acquire the Acquired Assets. Pursuant to the Agreement, the Purchaser would provide consideration for the Acquired Assets equal to that contained in Section 3.1 of the Agreement (the "Purchase Price"). Such Purchase Price will be in the form of a credit bid, under section 363(k) of the Bankruptcy Code, on account of the obligations owed to the Purchaser under the DIP Credit Agreement and the prepetition Credit Agreement. The transaction

---

[1] The Debtor is GigaBeam Corporation, tax identification number **-***7757.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement (defined below).

contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

*Assets for Sale*

The Debtor is offering for sale in one or more transactions all or substantially all of its assets. The assets for sale do not include the Excluded Assets.

*Participation Requirements*

To participate in the bidding process or to otherwise be considered for any purpose hereunder, a person interested in all or portions of the Acquired Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtor, its counsel, and any official committee appointed in this chapter 11 case, not later than ten days from entry of the Bidding Procedures Order:

1.  Confidentiality Agreement. An executed confidentiality agreement in form and substance acceptable to the Debtor and its counsel;

2.  Identification of Potential Bidder. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;[3] and

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the assets of the Debtor do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in subparagraphs (a) and (b) below, and that the Debtor in its discretion and with assistance from its advisors determine is reasonably likely to submit a *bona fide* offer that would result in greater cash value being received for the benefit of the Debtor's creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

(a)  Corporate Authority. Within ten (10) days prior to the Bid Deadline (defined below), written evidence of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of

---

[3] An interested party need not be a Qualified Bidder to access the data room, but must submit the confidentiality agreement and must comply with the identification requirements.

the contemplated transaction by the equity holder(s) of such Potential Bidder (the "Principals"); and

(b)  Proof of Financial Ability to Perform.  Within ten (10) days prior to the Bid Deadline (defined below), written evidence that the Debtor reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction.  Such information should include, *inter alia*, the following:

i.  the Potential Bidder's current financial statements (audited if they exist);

ii.  contact names and numbers for verification of financing sources;

iii.  evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction; provided, however, that the Debtor shall determine, in its reasonable discretion, in consultation with the Debtor's advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(d) above, the Debtor, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Purchaser shall be deemed a Qualified Bidder.

*Access to Due Diligence Materials*

After entry of the Bidding Procedures Order, only Potential Bidders that comply with the Participation Requirements are eligible to receive due diligence access or additional non-public information.  If the Debtor determines that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate.  The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders.  The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined).  The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Acquired Assets.

If the Debtor furnishes any information related to the Debtor not theretofore given to Purchasers, then the Debtor shall make such information available to Purchaser and each Qualified Bidder.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## **Bidding Process**

The Debtor and its advisors, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions, above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Acquired Assets (collectively, the "Bidding Process"). The Debtor shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids by a Qualified Bidder shall be October 19, 2009, at 4:00 p.m. (Eastern Time)** (the "Bid Deadline").

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its cash bid to: (i) the Debtor; (ii) counsel to the Debtor; (iii) counsel to any official committees appointed in this chapter 11 case; and (iv) the Office of the United States Trustee (collectively, the "Bidding Notice Parties") by the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the following conditions:

> 1. Good Faith Deposit. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtor in an amount equal to $200,000.

2.    Minimum Overbid.  The consideration proposed by the Bid can include only cash.  The aggregate consideration must equal or exceed the sum of the Purchase Price plus $275,000.

3.    Irrevocable.  A Bid must be irrevocable until two (2) business days after the Acquired Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "Termination Date").

4.    The Same or Better Terms:  The Bid must be on terms that, in the Debtor's business judgment are substantially the same or better than the terms of the Agreement.  A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents").  A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to Purchase Price).  The Contemplated Transaction Documents must include a commitment to close by the Termination Date.  A Bid should propose a contemplated transaction involving all of the Acquired Assets, but the Debtor will consider proposals for less than substantially all the Acquired Assets, provided that the Debtor may evaluate all Bids, in its sole discretion, to determine whether such Bid maximizes the value of the Debtor's estate as a whole.

5.    Contingencies:  A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

6.    Financing Sources:  A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor with appropriate contact information for such financing sources.

7.    No Fees Payable to Qualified Bidder:  A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bidding Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid," if the Debtor believes, in its reasonable discretion, that such bid would be consummated if selected as the Successful Bid.  For purposes hereof, the Agreement shall constitute a Qualified Bid.

In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

## Auction

Only if a Qualified Bid (other than Purchaser's) is received by the Bid Deadline, shall the Debtor conduct an auction (the "Auction") to determine the highest and best bid with respect to the Acquired Assets. The Debtor shall provide Purchaser and all Qualified Bidders with copies of all Qualified Bids at least twenty-four (24) hours prior to any Auction. The Auction shall commence on October 28, 2009 at 10:00 a.m. at the offices of Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801, and any changes to the time and location of the Auction will either be filed with the Court or announced at the Auction. The Auction will be conducted openly and all creditors will be permitted to attend.

No later than the commencement of the Auction, the Debtor will notify all Qualified Bidders of (i) the highest, best and otherwise financially superior Qualified Bid, as determined in the Debtor's discretion (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders (if Purchasers' Qualified Bid constitutes the Baseline Bid then the Expense Reimbursement shall be added to the Qualified Bid for purposes of the Auction).

If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Purchaser will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the Sale Hearing, the Debtor will seek approval of and authority to consummate the Proposed Sale contemplated by the Agreement.

The Auction shall be conducted according to the following procedures:

1.    Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders and the Debtor shall be permitted to participate. Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the Auction or the Proposed Sale.

During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of at least $100,000. Other than otherwise set forth herein, the Debtor may conduct the Auction in the manner they determine will result in the highest, best or otherwise financially superior offer for the Acquired Assets.

2.    The Debtor Shall Conduct the Auction

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction the Debtor shall describe the terms of the Baseline Bid. The determination of which

Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtor reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following: (A) the amount and nature of the consideration; (B) the proposed assumption of any liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the Agreement, if any, contemplated by the Contemplated Transaction Documents, and (H) the net after-tax consideration to be received by the Debtor's estate (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a transcript or videotape of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

     3.    Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

     i.    Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $100,000. Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash; provided, however, notwithstanding the foregoing, any Overbid by the Purchaser may be a credit bid under section 363(k) of the Bankruptcy Code, either in full or in part.

     ii.    Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtor accepts a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

To the extent not previously provided (which shall be determined by the Debtor), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

     iii.    Announcing Overbids

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtor's estate based on, *inter alia*, the Bid Assessment Criteria.

iv.     Consideration of Overbids

The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Qualified Bidder (other than the Purchaser) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

4.     Additional Procedures

The Debtor may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion, will promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order, provided, however, that the Terms of the Overbids shall not be modified without the Purchaser's consent if a subsequent bid, including the Overbid amount, is not sufficient to satisfy all of the Purchaser's claims and outstanding obligations under the DIP Credit Agreements, the prepetition Credit Agreements and the Expense Reimbursement. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

5.     Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

6.     Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Debtor shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest, best or otherwise financially superior offer for the Acquired Assets (the "Successful Bid") and the entity or entities submitting such Successful Bid, the "Successful Bidder"), which highest, best or otherwise financially superior offer will provide the greatest amount of net value to the Debtor, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination (the "Back-up Bidder"). If the Purchaser's final bid is deemed to be highest and best at the conclusion of the Auction, Purchaser will be the Successful Bidder, and such bid, the Successful Bid. If the Purchaser is not the Successful Bidder, the Purchaser's final bid shall only be a binding Back-up Bid if the Purchaser submits a bid at the

Auction that is higher and better than their bid as set forth in the Agreement. Prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

## Acceptance of Successful Bid

The Debtor shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Debtor's selection of the Successful Bidder (including the assignment of any of such objector's Assumed Executory Contract thereto, provided, however, that any objection to such assignment on the basis of the Cure Amount must be made and/or reserved as set forth in the order approving these Bidding Procedures).

## Credit Bidding

The Purchaser can credit bid some or all of its claims to the full extent permitted by section 363(k) of the Bankruptcy Code.

## Free Of Any And All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Debtor's right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Acquired Assets.

## Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on a day that is one (1) business day following the Auction Date or on such date as may be established by the Bankruptcy Court. Following the approval of the sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fail to consummate an approved sale within twenty (20) days after entry of an Order approving the Sale, the Debtor shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

## Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

## Failure to Consummate Sale

If the Auction is conducted, the Back-up Bidder shall keep the Back-up Bid open and irrevocable until 5:00 p.m. (ET) on the first business day following the Closing of the Sale with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-up Bidder's bid will be deemed to be the new Successful Bid, and the Debtor will be authorized, but not required, to consummate the sale with the Back-up Bidder without further order of the Court upon at least 24 hours' notice to the Notice Parties. In such case, the Successful Bidder's deposit shall be forfeited to the Debtor as damages and the Debtor specifically reserves all right to seek all available damages from the defaulting Successful Bidder.

## Modifications

The Bidding Procedures may not be modified except with the express written consent of the Debtor and the Purchaser.

The Debtor, may (a) determine, which Qualified Bid, if any, is the highest, best or otherwise financially superior offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Debtor, its estate and creditors.

At or before the Sale Hearing, the Debtor may impose such other terms and conditions as the Debtor may determine to be in the best interest of the Debtor's estate, its creditors and other parties in interest.

# **EXHIBIT B TO BIDDING PROCEDURES ORDER**

Auction and Sale Notice

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-_____ (_____) |
| GigaBeam Corp.,[1] | : | |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

## AUCTION AND SALE NOTICE

**PLEASE TAKE NOTICE** that on September __, 2009, the above-captioned debtor and debtor in possession (the "Debtor") filed the Debtor's Motion for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I)(A) Approving Procedures in Connection with Sale of Debtor's Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice thereof; and (F) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related thereto; and (C) Granting Related Relief [Docket No. _____] (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtor has received a Qualified Bid from the Purchaser. All parties that may be interested in submitting a bid for the Acquired Assets or any portion thereof or taking part in the Auction (as defined below) must read carefully the Bid Procedures as outlined in the Bidding Procedures Order (as defined below).

Only those parties that submit Qualified Bids may participate in the Auction (as defined below); if you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures as referenced in the Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order"). Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge upon request of Debtor's counsel, Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801 (Attn: Daniel K. Astin, Esquire).

A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to: (a) the Debtor, 4915 Prospectus Drive, Suite H, Durham, North Carolina 27713 (Attn: Samuel J. Lawrence); (b) proposed counsel to the Debtor, Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801 (Attn: Daniel K. Astin, Esquire); (c) financial advisors to the Debtor, Focus Management Group (Attn: John Bambach); (d) counsel to the Purchaser, Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 East 55th Street, New York, NY 10022 (Attn: Adam H. Friedman, Esquire), and Landis Rath and Cobb, LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (Attn: Adam G. Landis, Esquire); (e) the Office of the United States Trustee; and (f) if formed, counsel to the Committee (collectively, the "Bidding Notice Parties"), not later than 4:00 p.m. (Eastern Time) on October 19, 2009 (the "Bid Deadline") and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

If a Qualified Bid other than the Purchaser's Bid is timely received, the Auction will be held on October 28, 2009 at 10:00 a.m. (Eastern Time), and the Debtor shall notify the Bidding Notice Parties and all Qualified Bidders which have submitted a Qualified Bid and expressed their intent to participate in the Auction as to the time and place of the Auction designated by the Debtor not later than 4:00 p.m. (Eastern Time) on October 26,

---

[1] The Debtor is GigaBeam Corporation, tax identification number **-***7757.

[2] All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion.

2009. If however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Purchaser will be deemed the Successful Bidder, the Asset Purchase Agreement will be the Successful Bid, and, at the Sale Hearing scheduled for October 29, 2009, the Debtor will seek approval of and authority to consummate the transaction contemplated by the Asset Purchase Agreement.

Only a Qualified Bidder which has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders and the Debtor shall be permitted to participate in the Auction. The Auction will be conducted openly and all creditors will be permitted to attend. At the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall begin initially with the highest Baseline Bid as disclosed to all Qualified Bidders prior to commencement of the Auction, and continue in minimum increments of at least $100,000. The highest, best or otherwise financially superior offer for the Acquired Assets shall be determined by the Debtor in its discretion, in consultation with the Committee, or as determined by the Bankruptcy Court in the event of a dispute.

At the Sale Hearing, the Debtor will present the Successful Bid to the Bankruptcy Court for approval. The Debtor will sell the Acquired Assets or any portion thereof to the Successful Bidder, or to the Purchaser in accordance with the Asset Purchase Agreement if a higher or otherwise better Qualified Bid is not received and accepted as the Successful Bid. If the Successful Bidder fails to consummate an approved Sale because of a breach or a failure to perform on the part of such Successful Bidder, the Debtor shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

If you seek to object to the Sale of the Acquired Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order. Such Objections must be filed with the Bankruptcy Court and served on the Bidding Notice Parties no later than 4:00 p.m. (Eastern Time) on October 23, 2009. If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection.

Dated:  Wilmington, Delaware        CIARDI CIARDI & ASTIN
        September __, 2009

Daniel K. Astin (No. 4068)
Anthony M. Saccullo (No. 4141)
Mary E. Augustine (No. 4477)
Carl D. Neff (No. 4895)
919 Market Street, Suite 700
Wilmington, DE 19803
Telephone: (302) 658-1100
Facsimile: (302) 658-1300

Proposed Counsel for Debtor and Debtor in Possession

## EXHIBIT C TO BIDDING PROCEDURES ORDER

Publication Notice

In re                                       :       Chapter 11
                                            :       Case No. 09-_____  (_____)
           GigaBeam Corp.,[1]               :
                                            :
                                            :
                           Debtor.          :
                                            :

## PUBLICATION NOTICE

      **PLEASE TAKE NOTICE** that on September __, 2009, the above-captioned debtor and debtor in possession (the "Debtor") filed the Debtor's Motion for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I)(A) Approving Procedures in Connection with Sale of Debtor's Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice thereof; and (F) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related thereto; and (C) Granting Related Relief [Docket No. _____] (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtor has received a Qualified Bid from the Purchaser. All parties that may be interested in submitting a bid for the Acquired Assets or any portion thereof or taking part in the Auction (as defined below) must read carefully the Bid Procedures as outlined in the Bidding Procedures Order (as defined below).

      Only those parties that submit Qualified Bids may participate in the Auction (as defined below); if you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures as referenced in the Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order"). Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge upon request of Debtor's counsel, Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801 (Attn: Daniel K. Astin, Esquire).

      A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to: (a) the Debtor, 4915 Prospectus Drive, Suite H, Durham, North Carolina 27713 (Attn: Samuel J. Lawrence); (b) proposed counsel to the Debtor, Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801 (Attn: Daniel K. Astin, Esquire); (c) financial advisor to the Debtor, Focus Management Group (Attn: John Bambach); (d) counsel to the Purchaser, Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 East 55th Street, New York, NY 10022 (Attn: Adam H. Friedman, Esquire), and Landis Rath and Cobb, LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (Attn: Adam G. Landis, Esquire); (e) the Office of the United States Trustee; and (f) once it is formed, counsel to the Committee (collectively, the "Bidding Notice Parties"), not later than 4:00 p.m. (Eastern Time) on October 19, 2009 (the "Bid Deadline") and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

      If a Qualified Bid other than the Purchaser's Bid is timely received, the Auction will be held on October 28, 2009 at 10:00 a.m. (Eastern Time). If however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Purchaser will be deemed the Successful Bidder and the Asset Purchase Agreement will be the Successful Bid.

---

[1] The Debtor is GigaBeam Corporation, tax identification number **-***7757.

[2] All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion.

If you seek to object to the sale of the Acquired Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order. Such Objections must be filed with the Bankruptcy Court and served on the Bidding Notice Parties no later than 4:00 p.m. (Eastern Time) on October 23, 2009. If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection.

Dated: Wilmington, Delaware
September __, 2009

CIARDI CIARDI & ASTIN

_____
Daniel K. Astin (No. 4068)
Anthony M. Saccullo (No. 4141)
Mary E. Augustine (No. 4477)
Carl D. Neff (No. 4895)
919 Market Street, Suite 700
Wilmington, DE 19803
Telephone: (302) 658-1100
Facsimile: (302) 658-1300

Proposed Counsel for Debtor and Debtor in Possession

## EXHIBIT D TO BIDDING PROCEDURES ORDER

Assumption and Assignment Notice

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-_____ (_____) |
| GigaBeam Corp.,[1] | : | |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

## NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH PROPOSED SALE OF DEBTOR'S ASSETS

**PLEASE TAKE NOTICE** that on September __, 2009, the above-captioned debtor and debtor in possession (the "Debtor") filed the Debtor's Motion for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I)(A) Approving Procedures in Connection with Sale of Debtor's Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice thereof; and (F) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related thereto; and (C) Granting Related Relief [Docket No. _____] (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

At a hearing held before the Bankruptcy Court on September [__], 2009, the Bankruptcy Court entered an Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order"). Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge upon request of Debtor's counsel, Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801 (Attn: Daniel K. Astin, Esquire). Pursuant to the Bidding Procedures Order, on October 29, 2009 at ___:___ __.m (Eastern Time), the Bankruptcy Court will hold a hearing (the "Sale Hearing") to consider the Sale.

Pursuant to the Bid Procedures Motion, the Debtor seeks to assume and assign to the Purchaser or the Successful Bidder certain of their unexpired leases, license agreements and executory contracts (collectively, the "Assumed Contracts") free and clear of all liens, claims, encumbrances and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code (the "Cure Costs"). The Assumed Contracts that the Debtor may, but are not required, to assume and assign and the corresponding Cure Costs are listed on the attached Exhibit A (the "Cure Schedule").

Pursuant to the Bidding Procedures Order, any objection (a "Cure Objection") to the assumption and assignment by the Debtor of the Assumed Contracts and the corresponding Cure Costs must be (a) in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, (c) filed with the Clerk of the Bankruptcy Court, Third Floor, 824 Market Street, Wilmington, Delaware 19801 on or before 4:00 p.m. (Eastern Time) on October 23, 2009 (the "Cure Objection Deadline") and (d) served so as to be received no later than 4:00 p.m. (Eastern Time) on the same day upon: (i) the Debtor, 4915 Prospectus Drive, Suite H, Durham, North Carolina 27713 (Attn: Samuel J. Lawrence); (ii) proposed counsel to the Debtor, Ciardi Ciardi & Astin, 919 North Market Street, Suite 700, Wilmington, Delaware 19801 (Attn: Daniel K. Astin, Esquire); (iii) financial advisor to the Debtor, Focus Management Group (Attn: John Bambach); (iv) counsel to the Purchaser, Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 East 55th Street, New York, NY 10022 (Attn: Adam H. Friedman, Esquire), and Landis Rath and Cobb, LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (Attn: Adam G. Landis,

---

[1] The Debtor is GigaBeam Corporation, tax identification number **-***7757.

[2] All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion.

Esquire); (v) the Office of the United States Trustee; and (vi) once it is formed, counsel to the Committee; provided, however, that in the event the Auction results in a Successful Bidder other than the Purchaser, the Debtor shall file a notice identifying such Successful Bidder, and serve such notice upon each party identified in the Cure Schedule. The deadline for objecting to the assignment of the Assumed Contracts to such Successful Bidder on the basis of adequate assurance of future performance will be the commencement of the Sale Hearing. Any such objection shall set forth a specific default in any Assumed Contract and claim a specific monetary amount that differs from the Cure Cost, if any, specified by the Debtor in the Cure Schedule.

Unless the non-Debtor party to an Assumed Contract timely files and serves a Cure Objection by the Cure Objection Deadline (or in the event that the Purchaser is not the Successful Bidder, at or prior to the Sale Hearing), such non-Debtor party to the Assumed Contract shall be: (a) forever barred from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtor and the Successful Bidder will be entitled to rely solely upon the Cure Cost set forth in the Cure Schedule; (b) deemed to have consented to the Debtor's assumption and assignment of such Assumed Contract; and (c) forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder (i) that any additional amounts are due or other defaults exist, (ii) that additional conditions to assumption and assignment must be satisfied by the Debtor or the Successful Bidder, or (iii) that there is any objection or defense with respect to the assumption and assignment of such Assumed Contract.

The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before the Bankruptcy Court or on the Bankruptcy Court's calendar on the date scheduled for said hearing.

Dated: Wilmington, Delaware  
September __, 2009

CIARDI CIARDI & ASTIN

_____  
Daniel K. Astin (No. 4068)  
Anthony M. Saccullo (No. 4141)  
Mary E. Augustine (No. 4477)  
Carl D. Neff (No. 4895)  
919 Market Street, Suite 700  
Wilmington, DE 19803  
Telephone: (302) 658-1100  
Facsimile: (302) 658-1300  

Proposed Counsel for Debtor and Debtor in Possession