## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09- 13113 (____) |
| GigaBeam Corp.,[1] | : | |
| | : | |
| Debtor. | : | |
| | : | |

## APPLICATION OF DEBTOR PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) FOR AUTHORITY TO EMPLOY AND RETAIN FOCUS MANAGEMENT GROUP USA, INC. AS FINANCIAL ADVISORS AND INVESTMENT BANKERS FOR THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE

GigaBeam Corporation (the "Debtor"), debtor and debtor in possession, hereby applies (the "Application") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authority to employ and retain Focus Management Group USA, Inc. ("FMG") as financial advisors and investment bankers for the Debtor, *nunc pro tunc* to the Petition Date (defined herein), and in support hereof, respectfully represent as follows:

### INTRODUCTION

1.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

2.     The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

---

[1]     The Debtor is GigaBeam Corporation, tax identification number **-***7757.

3.     This Court has jurisdiction to hear the Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory basis for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code.[2]

## BACKGROUND

5.     The factual background of the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Declaration of Samuel J. Lawrence in Support of First Day Motions and Applications (the "First Day Declaration"), filed concurrently herewith and fully incorporated herein by reference.

## RELIEF REQUESTED

6.     By this Application, the Debtor respectfully requests an order authorizing the employment and retention of FMG as financial advisors and investment bankers to the Debtor during this chapter 11 case pursuant to the terms of the engagement letter (the "Agreement") attached hereto as Exhibit A.  The Declaration of J. Tim Pruban (the "Pruban Declaration") in support of this Application, executed on behalf of FMG in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, is attached hereto as Exhibit B, and incorporated herein by reference.

---

[2]     All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

US_ACTIVE-102268585.2-999983-13284

## BASIS FOR RELIEF

### A.    Qualification of Professionals

7.    FMG is a professional services firm and is highly qualified to perform the services required by the Debtor. FMG has extensive experience in all levels of insolvency and workout financial advisory roles, including providing crisis management, supervising asset liquidations, and representing debtors, creditors and creditors' committees. As financial advisors and investment bankers to the Debtor, FMG will assess the cash flow and viability of the Debtor, evaluate management and business strategy, look at past operating and future performance of the Debtor, solicit parties interested in the purchase of the Debtor's assets, prepare reports for the Office of the United States Trustee and otherwise advise the Debtor on the matters which are specified herein.

8.    The Debtor submits that the retention of financial advisors and investment bankers is justifiable and necessary to assist and further enable the Debtor to execute its duties as debtor and debtor in possession.

### B.    Disinterestedness

9.    Section 327(a) of the Bankruptcy Code provides for the appointment of a professional where that person does not possess any interest materially adverse to the Debtor with regard to the matters that will be handled by such person and where the professional is a disinterested person.

10.    FMG has conducted an examination of their files to determine whether it is disinterested within the meaning of section 101 of the Bankruptcy Code. Specifically, FMG has examined whether it has connections to members of the twenty largest creditors of the Debtor as well as entities associated with the Debtor. FMG has not discovered any conflicts with or representations of these parties that would prevent it from being deemed disinterested within the

US_ACTIVE-102268685.2-999983-13284

meaning of applicable provisions of the Bankruptcy Code. FMG has not provided and will not provide professional services to any of the creditors or above-named parties or their attorneys of record in any manner related to the Debtor's chapter 11 filing.

11.     FMG will conduct an ongoing review of their files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, FMG will provide the Court with a supplemental affidavit.

12.     FMG has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this case.

**C.     Scope of Services**

13.     Subject to this Court's approval, it is proposed that FMG may, as appropriate and to the extent requested and/or directed by the Debtor's management, provide the following services:

i.      Services - Financial Advisor:

     a.     Assist the Debtor in preparing and filing financial documents or reports;

     b.     Assist the Debtor with determining whether or not its business is viable on a going forward basis;

     c.     Assess the Debtor's post-petition finances, including its revenues and disbursements;

     d.     Assist the Debtor in preparing reports in connection with its debtor in possession financing, sale of assets, or plan of reorganization, if possible;

     e.     Assist the Debtor in negotiating the terms of the debtor in possession financing and the terms of the DIP Credit Agreements;

     f.     Advise the Debtor with regard to the financial viability of any plan of reorganization;

     g.     Review the performance of management of the Debtor;

     h.     Participate in discussions with Debtor's counsel, as necessary;

i.  Meet with the Debtor's representatives and representatives of important constituents including the Debtor's creditors, and any other significant creditors or parties as necessary;

j.  Analyze and advise the Debtor regarding the disposition of its assets;

k.  Assist the Debtor with regard to litigation and contested matters that arise in this case including assistance to the Debtor on such matters which the Debtor commences and provide related testimony as necessary;

l.  Provide such other services as the Debtor may require from time to time;

m.  Render testimony as necessary; and

n.  Provide such other services, as specifically requested by the Debtor and agreed upon by Focus.

ii.  <u>Services - Sale of Business:</u>

a.  Assist the Debtor in organizing and managing the sale of its business and assets in accordance with Section 363(b) of the United States Bankruptcy Code ("the Code"), to include without limitation:

   i.  Preparation of a confidential "teaser";

   ii.  Distribution of teaser memorandum to prospective bidders;

   iii.  Establishment and management of a secure on-line data warehouse;

   iv.  Preparation of a profile of the Debtor to be distributed to potential acquirers;

   v.  Assist in the due diligence efforts of potential bidders;

   vi.  Assisting Debtor's with presentations to potential bidders;

   vii.  Assist in conducting an auction pursuant to the proposed sale in this case;

   viii.  Attend meetings with the interested parties;

   ix.  Evaluate and review and bids or other documents received in connection with the sale process;

   x.  Provide testimony as requested by the Debtor regarding the sale process;

   xi.  Assist the Debtor in fulfilling the bid procedures;

- 5 -

xii.   Assist the Debtor in marketing the assets to potential purchasers; and

xiii.  Provide such other services as the Debtor may require from time to time.

14.    Subject to the Court's approval of this Application, FMG is willing to serve as the financial advisors and investment bankers to the Debtor and to perform the services described above.

**D.    Terms of Retention**

15.    In accordance with Section 328(a) of the Bankruptcy Code, FMG shall be compensated with a fixed fee of $75,000 (the "Fixed Fee") plus reimbursement for expenses incurred, for services rendered during (i) the first thirteen weeks of Debtor's chapter 11 case, or (ii) the period commencing on the date of the filing of the Debtor's chapter 11 case and ending upon the consummation of a sale of substantially all of the Debtor's assets, whichever is shorter (the "Fixed Fee Period"). The Fixed Fee shall be paid, in accordance with Section 328(a) of the Bankruptcy Code, as follows: $50,000 will be paid on or before September 4, 2009, and $25,000 will be paid on or before October 30, 2009, with any unpaid amounts payable upon the date of the conclusion of the Fixed Fee Period. The Fixed Fee is earned and payable upon the entry of and order approving this Application.

16.    In the event that Focus provides services after the Fixed Fee Period, its fees shall be paid at the following hourly rates:

o      Managing Directors    $450.00 per hour

o      Senior Consultants    $400.00 per hour

17.    In accordance with Section 328(a) of the Bankruptcy Code, FMG will also be compensated with a performance fee for services rendered in connection with the sale of the Debtor's assets (the "Performance Fee"). In the event that at any time prior to the expiration of

- 6 -

twelve (12) months after the termination of the Agreement the Debtor obtains a commitment for, and otherwise complete, a Qualifying Transaction[3] (as defined below), the Debtor shall pay FGM the Performance Fee, which will be 3% of the Aggregate Consideration[4] received for the sale of substantially all of the Debtor's assets in excess of the credit bid, in connection with any Qualifying Transaction (or portion thereof). The Performance Fee shall be payable, in accordance with Section 328(a) of the Bankruptcy Code, in immediately available funds at the closing(s) of the Qualifying Transaction and prior to the release of any closing proceeds to the Debtor, creditors, any third parties, or the Debtor's bankruptcy estate.

18.    Upon the occurrence of a Qualifying Transaction, the Performance Fee described above shall be paid in addition to, not in lieu of, the professional fees at the fixed monthly rates described above.

---

[3]   A "Qualifying Transaction" shall mean the earlier of (i) the sale of all or substantially all of the assets or equity of the Debtor in one or more transactions; (ii) the merger or consolidation of the Debtor with or into any other entity in one or more transactions; or (iii) the substantial consummation of a plan of reorganization for the Debtor.

A transaction similar to the following transactions will NOT result in a Qualifying Transaction as defined above: (i) an otherwise Qualifying Transaction to Midsummer Investments, Ltd. ("Midsummer") in the event that Midsummer elects to credit bid and/or assume its outstanding debt or otherwise acquire the Debtor's business or substantially all of its assets through an otherwise Qualifying Transaction, or (ii) an otherwise Qualifying Transaction to an entity owned or controlled by any current shareholder(s) or member(s) of the Debtor's management team in a transaction financed by Midsummer or pursuant to which Midsummer has assigned its rights to such shareholder/management-led entity to acquire the Debtor's business or substantially all of its assets in an otherwise Qualifying Transaction.

[4]   "Aggregate Consideration" means the aggregate fair market value of all cash and non-cash consideration (including, without limitation, any amount of debt that is forgiven or otherwise reduced from the original amount owed by the Debtor to any current or former investor/lender, excluding any amount of debt that is forgiven or otherwise reduced from the original amount owed by the Debtor to Midsummer) that is the greater of (i) the amounts committed or otherwise available to be paid in the Qualifying Transaction by the investors/lenders regardless of whether the Debtor actually receives or is to receive such consideration at closing of a Qualifying Transaction, or (ii) the amounts actually agreed or otherwise available to be paid at the closing of a Qualifying Transaction or thereafter. Without limiting the foregoing, the "Aggregate Consideration" shall include the sum of all tranches or other periodic payments to be paid in the future under the terms of a Qualifying Transaction.

US_ACTIVE-102288585.2-999983-13284

19.     As a condition to FGM's commencement of any services set forth in the Agreement, the DIP Lenders have agreed: (i) to provide FMG with a "carve out" from their collateral to pay the fees and expenses set forth in the Agreement and herein, and (ii) that if the Debtor's assets are sold pursuant to a credit bid, the DIP Lenders will pay FMG's fees and expenses in cash at the closing of any such sale.

20.     FMG will be compensated for their services and reimbursed for their expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

E.     **Waiver of Fee Application Requirements**

21.     FMG seeks approval of the Fixed Fee and the Performance Fee through the filing of this Application.   Therefore, FMG seeks a waiver of the requirement to file interim fee applications.  To the extent FMG incurs fees and expenses after the Fixed Fee Period, FMG will file interim and final fee applications with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered by this Court.

22.     The Debtor submits that the retention of FMG on the terms and conditions set forth herein is in the best interests of the Debtor, its estate, creditors and all parties in interest.

F.     **Indemnification Provisions**

23.     As part of the overall compensation payable to FMG under the terms of the Agreement, the Debtor has agreed to indemnification obligations as described in the Agreement. FMG and the Debtor believe that such provisions are customary and reasonable for financial advisory engagements in chapter 11.

24.     The Agreement provides that the Debtor will defend, protect, indemnify and hold harmless FMG and its personnel under certain circumstances.  The terms of the Agreement are

US_ACTIVE-102258585.2-999983-13284

standard engagement provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for FMG and other similar financial advisors as approved in this and other jurisdictions. *See, e.g., In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); *In re J.L. French Automotive Castings, Inc.*, Case No. 06-10119 (MFW) (Bankr. D. Del. Mar. 3, 2006); *In re Foamex Int'l Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Feb. 13, 2006); *In re Exide Techs.*, Case No. 02-11125 (JCA) (Bankr. D. Del. Aug. 21, 2002). Accordingly, the Debtor and FMG believe that the limited indemnity provided in the Agreement, as modified by the proposed order, is customary and reasonable for engagements of this type.

## NOTICE

25.    Notice of this Motion has been provided to the Office of the United States Trustee for the District of Delaware, the DIP Lender, and the Debtor's 20 largest creditors. The Debtor submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of an order (i) granting the relief requested herein and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

Dated:    Wilmington, Delaware
          September 2 _____, 2009


                                        _____
                                        Samuel J. Lawrence, Chief Executive Officer
                                        GigaBeam Corporation

US_ACTIVE-102288585.2-999983-13284

**Exhibit A**

# FOCUS MANAGEMENT GROUP USA, INC.

Agreement for Consulting Services
General Terms and Conditions

This Agreement (the "Agreement") is made this 26th day of August, 2009 by and between Focus Management Group USA, Inc. ("Focus") and GigaBeam Corporation ("Client"). In consideration of the mutual covenants contained herein, the parties agree as follows:

1. <u>Scope of Work</u>. From time to time, Focus shall perform services for or on behalf of Client as requested by one or more "Authorizations." Each Authorization shall specify the terms and conditions of the services to be performed by Focus, and shall become effective only upon execution by Client and Focus. In the event certain provisions of an Authorization conflict with the provisions of this Agreement, the parties hereto agree that the provisions of this Agreement shall be controlling.

2. <u>Compensation – Payment of Fees and Expenses</u>. Client shall pay Focus fees for services as set forth in each Authorization. Notwithstanding anything in the Agreement to the contrary, in the event client commences a case under the United States Bankruptcy Code, any and all fees payable to Focus hereunder shall be paid to Focus in accordance with and subject to the provisions of the United States Bankruptcy Code and any order entered by a bankruptcy court governing the allowance and payments of fees and expenses of professional persons in Client's bankruptcy case.

3. <u>Support Services</u>. Client shall provide Focus with duplicating, secretarial and other support services at the location of the work, provided these services are necessary to complete the work. If such services are unavailable at the locations of the work, Focus may provide such services, and shall be entitled to reimbursement from Client for these services charged at the customary published hourly rates for Focus's administrative personnel as may be established by Focus from time to time, subject to Bankruptcy Court approval.

4. <u>Rights to Work Product</u>. Client shall retain exclusive rights to ownership of all work product hereunder. Work product shall include reports issued pursuant to any Authorization, but shall exclude, among other things, all working papers by Focus, memoranda, correspondence, notes, and calculations that Focus may have prepared or used in the development of reports. Focus shall have the right to retain copies of reports issued to Client for Focus's records. Focus shall have the right to designate in writing certain work product as belonging to Focus prior to the creation of such work product, and such designated work product shall be the exclusive property of Focus if Client permits such work product created by Focus

5. <u>Access</u>. Client shall provide Focus and its Personnel (as defined below) with access to all of Client's information, Personnel, books, records, and facilities deemed necessary by Focus to complete the work under each Authorization. It may be necessary for Focus to arrange for prospective investors/lenders to visit one or more of the facilities and meet with certain members of Client. It may also be necessary for Client to make certain of its Personnel available for conference calls to answer questions of prospective investors/lenders. Client will accommodate such requests for access, provided they are made during normal business hours. Focus will use its best efforts to (i) accommodate Client's working schedule so as not to cause undue disruption of Client's business, and (ii) attend any visits made by prospective investors/lenders.

6. <u>Personnel</u>. Each party agrees that neither it nor its affiliates will at any time during the period commencing on the date hereof and continuing until the first anniversary of the date that (i) all work provided under all Authorizations has been completed or (ii) this Agreement is otherwise terminated, whichever occurs last, directly or indirectly, solicit for employment any current or former director, officer, employee or representative of the other party ("Personnel") without the prior written consent of the other party.

7.  Independent Contractor.  Unless otherwise specifically set forth in an Authorization, neither Focus nor any of its Personnel shall be deemed to be an agent, employee, officer or director of Client.  Under no circumstances shall Focus or any of its Personnel be, or be deemed to be, in control of the operations of Client, or to be an owner or operator or acting as a responsible person or controlling person with respect to Client.

8.  No Assumption of Liabilities.  Notwithstanding any provision herein to the contrary, Focus does not assume, and shall not be deemed to have assumed, any liabilities, debts or obligations of Client of any kind or description.

9.  Limitation of Liability; Indemnification.

(a)  Neither Focus nor any of its Personnel shall have any liability to Client for any action taken or for refraining from the taking of any action, or for errors in judgment, except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such person's willful misconduct or negligence of any sort.

(b)  Subject to Bankruptcy Court approval, Client hereby agrees to defend, protect, indemnify and hold harmless Focus and its Personnel (each of the foregoing being an "Indemnitee" and all of the foregoing being collectively the "Indemnitees") from and against any and all claims, actions, damages, liabilities, judgments, costs and expenses (including all fees and disbursements of counsel, legal assistants and paralegals which may be incurred in the investigation or defense of any matter and, in the event of litigation, at all trial and appellate levels) imposed upon, incurred by or asserted against any Indemnitee, whether direct, indirect or consequential and whether based on any federal, state, local or foreign laws or regulations, under common law on an equitable cause, or on contract or otherwise by reasons of an Indemnitee's services to Client (irrespective of whether an Indemnitee's services have been rendered in connection with this engagement or otherwise), except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such Indemnitee's willful misconduct or negligence of any sort.  In the event this indemnity is unenforceable as a matter of law as to a particular matter or consequence referred to herein, it shall be enforceable to the full extent permitted by law.

(c)  This indemnification applies, without limitation, to any act, omission, event or circumstance existing or occurring on or prior to the termination of the relationship between Focus and Client.  The indemnification provisions set forth above shall be in addition to any liability Client may otherwise have to Focus.  Without prejudice to the survival of any other obligation of Client to Focus, the indemnities and obligations of Client contained herein shall survive the termination of the relationship between Focus or any Indemnitee and Client.

10.  Confidentiality.  Focus shall maintain in strict confidence any information of a non-public nature relating to Client or its business that Focus may gain or develop in the course of its engagement by Client, and shall not disclose any such information to any person during or after its engagement by Client except (i) information that is legally in Focus's possession prior to the disclosure of such information hereunder; (ii) information that, subsequent to its disclosure hereunder, becomes publicly available; (iii) information that becomes legally available to Focus on a non-confidential basis from any third party; (iv) information that Focus discloses as permitted by law or required by law or order of court; or (v) information that is disclosed with the consent of Client.  Notwithstanding the above, Focus shall be permitted to disclose any information regarding Client to (x) Focus's Personnel who need to know such information to perform the services described in the Authorization and (y) existing creditors of Client.  Upon termination of this Agreement, Focus shall return to Client all materials of a non-public nature from Client in the course of the engagement (other than Focus's work product), and shall either deliver to Client or destroy any copies thereof that it may have made or received.

11.   Termination. This Agreement may be terminated immediately by either party, in its sole discretion, for any reason whatsoever, with or without cause, by giving written notice of termination to the other party. Upon termination of this Agreement, Focus shall be entitled to all unpaid expenses incurred pursuant to this Agreement and the remaining unpaid balance of any fee which is due and payable pursuant hereto. For the purposes of this Section 11, "Agreement" shall include any Authorization issued pursuant to this Agreement.

12.   Governing Law and Venue. This Agreement shall be interpreted, construed and enforced under the laws of the State of Florida, without regard to conflicts of laws, regardless of the location of the performance of services hereunder. Any claim, action or proceeding involving the parties hereto shall be brought exclusively in the United States Bankruptcy Court for the State of Florida and the parties hereby irrevocably consent to the jurisdiction of these courts and the proper venue therein, each party hereby waiving any claim that any such forum would be inconvenient.

13.   Joint and Several Obligation. If Client consists of more than one person or entity, each shall be jointly and severally liable to perform the obligations of Client under this Agreement and any and all Authorizations. Any one or more parties constituting Client may be released from an obligation hereunder without affecting the liability of any party not so released.

14.   Miscellaneous. This Agreement expresses the entire agreement of the parties hereto and supersedes all prior promises, representations, understandings, arrangements and agreements among the parties with respect to the subject matter hereof. No change, alteration, or modification of this Agreement shall be effective unless made in writing and signed by both parties hereto. This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the parties hereto; provided, however, that Client shall not assign any right herein or delegate any duties without the prior written consent of Focus. Failure of either party hereto to enforce any of the provisions of this Agreement or any rights with respect thereto shall in no way be considered to be a waiver of such provisions or rights or in any way affect the validity of this Agreement. In the event that any provision of this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, then the court making such determination may reduce the obligations so as to be enforceable according to applicable law and enforce such obligations as reduced. The remaining provisions of this Agreement shall be enforced according to their terms

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

"Focus"                                    "Client"

FOCUS MANAGEMENT GROUP USA, INC.          GIGABEAM CORPORATION

By: _____      By: _____

Name:  J. Tim Pruban                       Name:  Samuel J. Lawrence
Title:   President                          Title:   CEO

# FOCUS MANAGEMENT GROUP USA, INC.

<u>WORK/PROJECT AUTHORIZATION NO. 1</u>

DATED: <u>August 26, 2009</u>

In accordance with that certain Agreement for Consulting Services dated August 26, 2009, by and between the undersigned Client and Focus Management Group USA, Inc. (the "Agreement"), Client hereby authorizes Focus Management Group USA, Inc., ("Focus") to perform the following services in accordance with the terms, conditions and covenants set forth in the Agreement and in this Authorization:

<u>Retention</u>
In the event that Client commences a case under the United States Bankruptcy Code (the "Code"), Client will seek to retain Focus in the capacity of Financial Advisor.

Focus will work closely with the Client and its counsel by performing, without limitation, the following services:

<u>A. Services – Financial Advisor:</u>
1.  Provide oversight as required to Client in connection with the Client's Chapter 11 case including;
2.  Review, evaluate and analyze the Client's internally prepared financial statements and related documentation, in order to evaluate the performance of the Client as compared to projected results on an ongoing basis;
3.  If so requested, attend and advise at meetings with the Client, its counsel, other financial advisors and representatives of the Creditors Committee (if formed);
4.  Render testimony as necessary;
5.  Provide such other services, as specifically requested by the Client and agreed by Focus.

<u>B. Services – Sale of Business:</u>
1.  Assist Client in organizing and managing the sale of its businesses and assets in accordance with Section 363 (b) of the United States Bankruptcy Code ("the Code"), to include without limitation:
    o   Preparation of a confidential "teaser" memorandum;
    o   Distribution of teaser to prospective bidders;
    o   Establishment and management of a secure on-line data warehouse;
    o   Prepare a confidential profile of the Client, in summary fashion and as approved by the Client, to be distributed to potential acquirers;
    o   Assist in the due diligence efforts of potential bidders;
    o   Assist with 363 auction;
2.  Provide testimony as requested by the Client and communicate with the Creditors Committee (if formed) concerning the sale process in accordance with any agreed upon protocol between the Client and the Committee and authorized by the Client.

<u>Compensation:</u>
*   Carve Out: As a condition to the commencement of any work described herein, Client's secured lenders shall agree (i) to provide Focus with a "carve out" from their collateral to pay Focus' fees as described herein, and (ii) that in the event that the secured creditor credit bids in connection with any sale in Client's Chapter 11 Case, the secured creditor will pay the fees of Focus in cash at the closing of any such sale.

*   Professional Fees: Professional fees shall be charged at a fixed fee of $75,000 (plus all expenses) for services during (i) the first thirteen weeks of Clients' Chapter 11 Case, or (ii) the period commencing on the date of the filing of Client's Chapter 11 Case and ending upon the consummation of a sale of substantially all of Client's assets, whichever is shorter (the "Fixed Fee Period"). The Client will use best efforts to obtain approval of the foregoing fixed fee pursuant to Section 328(a) of the Bankruptcy Code. The foregoing fixed fee shall be paid as follows:

$50,000 on or before September 4, 2009 and $25,000 on or before October 30, 2009. with any unpaid amounts payable upon the date of the conclusion of the Fixed Fee Period. The fixed fee shall be earned upon entry of the order retaining Focus in Client's Chapter 11 case. In the event that Focus provides services after the Fixed Fee Period, its fees shall be paid at the following hourly rates:

- o  Managing Directors      $450.00 per hour
- o  Senior Consultants      $400.00 per hour

- Performance Fee:  For the purposes of this Authorization, the following terms shall have the meanings set forth opposite thereto:

> In the event that at any time prior to the expiration of twelve (12) months after the termination of the Agreement the Client obtains a commitment for, and otherwise completes, a Qualifying Transaction (as defined below), Client shall pay Focus the Performance Fee set forth below in connection with any Qualifying Transaction (or portion thereof), which amount shall be payable in immediately available funds at the closing(s) of the Qualifying Transaction and prior to the release of any closing proceeds to Client, creditors, any third parties or the Client' bankruptcy estates.

> In addition to compensation for professional fees described above, Focus shall receive a Performance Fee in the following amount:

> - 3% of the Aggregate Consideration in excess of the stalking horse bid

> Upon the occurrence of a Qualifying Transaction, the Performance Fee described above shall be paid in addition to, not in lieu of, the professional fees at the fixed monthly rates described above.

> The foregoing obligation of Client to pay Focus the Performance Fee shall survive the termination of this Authorization and of the Agreement as set forth above.

> A "Qualifying Transaction" shall mean the earlier of (i) the sale of all or substantially all of the assets or equity of the Client in one or more transactions; (ii) the merger or consolidation of the Client with or into any other entity in one or more transactions; or (iii) the substantial consummation of a plan of reorganization for the Client.

> A transaction similar to the following transactions will NOT result in a Qualifying Transaction as defined above: (i) an otherwise Qualifying Transaction to [Stalking Horse Bidder Name] ("Stalking Horse") in the event that Stalking Horse elects to credit bid and/or assume its outstanding debt or otherwise acquire the Client's businesses or substantially all of its assets through an otherwise Qualifying Transaction, or (ii) an otherwise Qualifying Transaction to an entity owned or controlled by any current shareholder(s) or member(s) of the Client's management team in a transaction financed by Stalking Horse or pursuant to which Stalking Horse has assigned its rights to such shareholder/management-led entity to acquire the Client's businesses or substantially all of its assets in an otherwise Qualifying Transaction.

> "Aggregate Consideration" means the aggregate fair market value of all cash and non-cash consideration (including, without limitation, any amount of debt that is forgiven or otherwise reduced from the original amount owed by Client to any current or former investor/lender, excluding any amount of debt that is forgiven or otherwise reduced from the original amount owed by Client to Stalking Horse) that is the greater of (i) the amounts committed or otherwise available to be paid in the Qualifying Transaction by the investors/lenders regardless of whether Client actually receive or are to receive such consideration at closing of a Qualifying Transaction, or (ii) the amounts actually agreed or

otherwise available to be paid at the closing of a Qualifying Transaction or thereafter. Without limiting the foregoing, the "Aggregate Consideration" shall include the sum of all tranches or other periodic payments to be paid in the future under the terms of a Qualifying Transaction.

Final Payment of Fees and Expenses:  In addition, Focus shall be entitled to final payment of any amounts due relating to the Performance Fee pursuant to this Authorization or the Agreement from funds provided at the closing of a Qualifying Transaction.

Other Provisions:
Notwithstanding anything in the Agreement to the contrary, in the event Client commences a case under the United States Bankruptcy Code, any and all fees payable to Focus hereunder shall be paid to Focus in accordance with and subject to the provisions of the United States Bankruptcy Code and any order entered by a bankruptcy court governing the allowance and payments of fees and expenses of professional persons in Client's bankruptcy case.

"Focus"                                                         "Client"

FOCUS MANAGEMENT GROUP USA, INC.          GIGABEAM CORPORATION

By: _____               By: _____

Name: _J. Tim Pruban_____                     Name: _Samuel J. Lawrence____
Title: __President_____                        Title: _CEO_____

# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-_____ ( ___ ) |
| | : | |
| GigaBeam Corp.,[1] | : | |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

## DECLARATION IN SUPPORT OF THE APPLICATION OF DEBTOR
## FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT OF
## FOCUS MANAGEMENT GROUP USA, INC. AS FINANCIAL ADVISORS
## AND INVESTMENT BANKERS TO THE DEBTOR *NUNC PRO TUNC*
## TO THE PETITION DATE

J. Tim Pruban, makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

1.      I am President of the firm of Focus Management Group USA, Inc. ("FMG"), with its principal offices at 5001 West Lemon Street, Tampa FL 33609, and I am authorized to execute this Declaration on behalf of FMG.

2.      I do not believe that I, nor any member of FMG, represent any interest adverse to the Debtor with respect to matters for which we are to be retained.

3.      I have reviewed the Application of Debtor Pursuant to 11 U.S.C. §§ 327(a) and 328(a) for Authority to Employ and Retain Focus Management Group as Financial Advisors and Investment Bankers for the Debtor *Nunc Pro Tunc* to the Petition Date (the "Application") and am aware of the statements contained therein, which statements are true and correct to the best of my knowledge information and belief.

---

[1]      The Debtor is GigaBeam Corporation, tax identification number **-***7757.

4.     FMG has conducted an examination of their files to determine whether it is disinterested within the meaning of section 101 of the Bankruptcy Code. Specifically, FMG has examined whether it has connections to members of the twenty largest creditors of the Debtor as well as entities associated with the Debtor. FMG has not discovered any conflicts with or representations of these parties that would prevent it from being deemed disinterested within the meaning of applicable provisions of the Bankruptcy Code. FMG has not provided and will not provide professional services to any of the creditors or above-named parties or their attorneys of record in any manner related to the Debtor's chapter 11 filing.

5.     Focus has in the past been engaged, and may in the future be engaged by, Blank Rome LLP and Bingham McCutchen LLP (collectively, "Counsels") in their capacity as counsels acting on behalf of a certain lenders, on matters wholly unrelated to the Debtor and its bankruptcy case. All such prior engagements with Counsels have been concluded and Focus is not currently providing any services to Counsels.

6.     To the best of my knowledge, FMG is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, in that:

(a)     Neither FMG nor any of its professionals hold or represent any interest adverse to the Debtor's estate.

(b)     Neither FMG nor any of its professionals is or was a creditor or an insider of the Debtor.

(c)     Neither FMG nor any of its professionals are or were, within two years before the Petition Date, a director, officer, or employee of the Debtor.

(d)     FMG does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or for any other reason.

US_ACTIVE-102288585.2-999883-13284

7.     FMG will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, FMG will provide the Court with a supplemental affidavit.

8.     FMG has not received a retainer in these cases. In addition, FMG has reviewed its records and believes it is not a pre-petition creditor of the Debtor.

I declare the matters stated herein to be true under the penalty of perjury of the laws of the United States of America.


Date: September 2, 2009

_____
J. Tim Pruban
Focus Management Group
5001 West Lemon Street

Tampa, FL 33609

T: 813-281-0062
F: 813-281-0063

US_ACTIVE-102265585.2-999933-13284

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Case No. 09-_____ (____) |
| GigaBeam Corp., [1] | : |  |
|  | : | Re: Docket No. ____ |
| Debtor. | : |  |
|  | : |  |

## ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF FOCUS MANAGEMENT GROUP USA, INC. AS FINANCIAL ADVISORS AND INVESTMENT BANKERS FOR THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the application (the "Application") of the debtor and debtor in possession (the "Debtor"), for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), authorizing the employment and retention of Focus Management Group USA, Inc. ("FMG") as financial advisors and investment bankers to the Debtor *nunc pro tunc* to the Petition Date;[2] and upon consideration of the Declaration of J. Tim Pruban of FMG (the "Pruban Declaration") and the Agreement, copies of which are annexed as exhibits to the Application; and the Court being satisfied, based on the representations made in the Application and in the Pruban Declaration, that FMG neither represents nor holds any interest adverse to the Debtor or to its estate as to the matters upon which it is to be engaged and is disinterested under sections 101(14) and 327(a) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and it further appearing that the employment of FMG is necessary and in the best interests of the Debtor, its estate, creditors and other parties in interest; and it further appearing that the Court has

---

[1] The Debtor is GigaBeam Corporation, tax identification number **-***7757.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

jurisdiction to consider the Application and the relief requested therein; and it appearing that due notice of the Application as set forth therein is sufficient under the circumstances, and that no other or further notice need be provided; and upon the record herein and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted; and it is further

ORDERED that, the Fixed Fee and the Performance Fee are approved and shall be paid to FMG in accordance with Section 328(a) of the Bankruptcy Code and as otherwise set forth in the Application and; and it is further

ORDERED that in accordance with sections 327(a) and 328(a) of the Bankruptcy Code, the Debtor, as debtor in possession, is authorized to employ, compensate, and reimburse FMG on the terms set forth in the Application the Agreement and this Order; and it is further

ORDERED that to the extent FMG incurs fees and expenses after the Fixed Fee Period, FMG shall be compensated in accordance with the procedures set forth in sections 328(a) and 331 of the Bankruptcy Code and such Federal Rules of Bankruptcy Procedure and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court; and it is further

ORDERED that FMG is relieved from the requirement to file interim and final fee applications with respect to the Fixed Fee and the Performance Fee; and it is further

ORDERED that notwithstanding any provisions in the Agreement to the contrary, the Debtor shall have no obligation to indemnify FMG unless the Court determines that

- 2 -

indemnification would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); and it is further

ORDERED that notwithstanding anything to the contrary herein or in the Application, no amounts approved hereunder may be paid if such payment is not provided for, or otherwise permitted under, the Budget and the Credit Agreement; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:     Wilmington, Delaware
           _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE-102268585.2-999983-13284